## No. 9922.

### S. D. CARPENTER VS. S. B. CAMP ET ALS.

The books of a commercial partnership are receivable in evidence, and are entitled to great weight and consideration when they bear upon the disputed questions of fact and with reference to which the testimony of witnesses is conflicting.

In case the business of the partnership has been almost exclusively conducted by one member of the firm, and the books have been kept by him, the other is entitled to introduce evidence of the incorrectness of the entries contained therein, and also to show that others, not entered, should be made; but this is subject to overthrow by countervailing testimony.

APPEAL from the Twenty-third District Court, Parish of Iberville. *Talbot*, J.

---

*Samuel Matthews* and *Leonard, Marks & Bruenn*, for Plaintiff and Appellee.

*A. A. Browne* and *David N. Barrow*, for Defendants and Appellants.

---

The opinion of the court was delivered by

WATKINS, J. This is a suit for a partition of the property of a saw-mill partnership, by licitation, and the settlement of its affairs between the partners.

The wife of the defendant (Camp) was made a party to the suit, but upon the exception of the curator *ad hoc* appointed to represent her, an absentee, it was dismissed as to her. Upon like exception the attachment was dissolved and the garnishees discharged.

At this juncture, the defendant, Camp, likewise a citizen of Hall-ville, Texas, appeared by *counsel* and filed an answer, and submitted himself to the jurisdiction of the court. There is no dispute in respect to what property remains for division and partition, and none in regard to the necessity and propriety of sale to effect it.

It appears that, prior to March, 1882, there was a partnership existing between J. H. Mallory and the plaintiff in the saw-mill business. The domicile was in Caddo parish, this State, and the defendant, Camp, was employed by the company, at a salary of $4 per day, with an *eventual* interest in the business.  It was in contemplation of the parties—a part of their agreement—that, when the net earnings of the mill should pay the amount of the original investment, Camp should become a partner.  Before this arrangement was consummated the plaintiff became the owner of Mallory's interest in the plant, and it was transferred to Hallville, Harrison County, Texas, in March, 1882.

Camp, assuming, and obligating himself to pay the deficit on the investment of Carpenter and Mallory of $1590 24, was admitted into full and equal partnership with the plaintiff.

The style of their firm was S. D. Carpenter & Co.

This contract was a *verbal* one.

The mill was operated at Hallville, Texas, from date of its establishment there until the 19th of June, 1883, when Camp, acting for S. D. Carpenter & Co., sold the entire plant to one J. J. McDearmont, for the price of $5611 23.   He removed same to the parish of Iberville, this State, and therein re-established it, and began the manufacture of lumber.   He made various payments on the purchase-price, whereby same was reduced to $1932 80, as shown by the books of S. D. Carpenter & Co.   In the meanwhile Camp purchased from McDearmont an undivided half interest in the plant, and they formed a new partnership, styled McDearmont & Camp.

In so doing Camp assumed and promised to pay to S. D. Carpenter & Co. the balance due them by McDearmont on the purchase-price of the mill.   Subsequently McDearmont & Camp became insolvent, and made a cession, and upon their schedule of liabilities placed S. D. Carpenter & Co. as their creditors at the sum above stated.

At a judicial sale made of the effects of the estate of the insolvents Camp became the adjudicatee for *S. D. Carpenter & Co.*, of the saw-mill and appurtenances.   The tableau of distribution therein filed shows that only a dividend of 31 per cent was due creditors and entitling S. D. Carpenter & Co. to $602 28.

Deducting this partial payment, and the balance due by Camp, on his assumption is $1330 52.   In this manner the plant was restored to S. D. Carpenter & Co., and these various mutations of title have produced, in great part, the differences and disputes between the partners.

As the business of this firm was to be under the management and

general superintendence of Camp, the books of the concern were either kept by him, or others, under his direction.

They were retained by Camp until about the 1st of February, 1885, when they were surrendered to the plaintiff. During the time the books were in his keeping he caused to be made therein certain entries, of which Camp complains as fraudulent. As soon as he recovered possession of them, he made certain counter entries, correcting and counteracting those made by Carpenter.

These entries and counter entries present the principal controversies for discussion and determination.

These may be enumerated as follows, viz:

1st. The statement of ledger and journal entries in reference to Camp's purchase of the Mallory interest in the mill, correctly.

2d. The ascertainment of the validity of Camp's claim for a salary and the adjustment of his account, accordingly.

3d. The determination of the amount due S. D. Carpenter & Co. by Camp on account of his assumption of the indebtedness of McDearmont, and the proper correction, if any, of his account.

4th. The proper allowance to be made to the plaintiff for price of mules and wagons sold by Camp.

5th. The adjustment of the item for freight bill paid by Carpenter, Ely & Co. on mill and machinery.

This *résumé* of the salient points in these complicated transactions enables us to determine the issues more easily.

I.

One of the principal troubles in the way of a settlement—one in relation to which a mass of evidence has been taken—arises from the disputed entries, above referred to.

The books of a commercial partnership are receivable in evidence, and are entitled to great weight and consideration, when they bear on disputed questions, and with reference to which the testimony of witnesses is conflicting and unsatisfactory. In the instant case the books seem to have been kept exclusively by the defendant up to the date the alleged fraudulent alterations were made. Up to this point we may safely assume that the books are correct, and at least, binding on the defendant. But we know of no rule whereby the plaintiff can be precluded from making an examination of them, or from introducing evidence to show their incorrectness; but the burden of proof is on the plaintiff, and he must prove the alleged errors by a fair and satisfactory preponderance of testimony. .

The books, when thus considered, show—at a date anterior to the plaintiff's correction—there was, viz:

A balance against Carpenter of............................$4,077 20

A balance against Camp of................................ 2,730 14

Both parties concede this.

## II.

The transaction in reference to Camp's purchase of an interest in the Carpenter & Mallory mill in 1882, and which is the stepping-stone to the formatien of the partnership of S. D. Carpenter & Co., is thus stated on the latter's books, as kept by Camp, viz:

" Mill account...........................................$1,590 24

" To Sundries:

" S. B. Camp.................... .... .................... $643 36

" S. D. Carpenter......................................... 946 88

In point of fact Carpenter & Mallory were indebted to Camp $643 36, and this formed a part of the amount he assumed in purchasing the mill. It should have been treated as a part payment on the amount of purchase price.

It should not have been placed to his credit.

Had Camp paid Carpenter $946 88 he would have been entitled to one-half interest in the mill. But he did not have the cash, and could not pay it. So Carpenter and Camp agreed that this matter should be settled by making proper entries in the books. The one just quoted is the one made by Camp. The proper entry would have been a charge against Camp and a credit to Carpenter of $946 88.

So the books should be corrected by charging Camp $643 36, in order to offset his improper credit of that amount, and he should be charged with the $946 88 due to Carpenter. The judge *a quo* made the latter correction only. His judgment must be so corrected as to charge Camp with $643 36 in addition.

## III.

An examination of the evidence has satisfied us that the demand of Camp for an allowance of $4 per day, or $1200 per annum, as a salary, in addition to one-half of the profits, is unfounded, and we concur in the decree of the district judge rejecting the same. He found that the defendant had only withdrawn, on that account, $525, and only charged him one-half of that sum—$262 50. We find, from the books, that he has withdrawn the sum of $582, and should have been charged with the *entire amount*. The situation is just the same as if he had expended, unduly, that sum for any purpose, disconnected from the partnership. He is chargeable with it.

### IV.

As is' fully shown in the statement, Camp purchased of McDearmont an interest in the mill and appurtenances, after the sale to him, and its removal to the parish of Iberville; and, as the price, agreed to assume, and promised to pay S. D. Carpenter & Co., the balance J. J. McDearmont was owing them, on his purchase thereof, as shown by the books of said company.

By this assumption said indebtedness became that of Camp, notwithstanding S. D. Carpenter had not released McDearmont.

As has been shown above, this balance is $1330 52, and he must be charged therewith, on settlement.

### V.

It is difficult to determine the proper allowance to be made in favor of the plaintiff, on the score of mules and wagons belonging to him, that were sold by the defendant Camp.

It does not appear from the petition that the plaintiff makes any definite and special claim on this score. But evidence was adduced on this issue; the parties argue it in their briefs; the judge *a quo* has examined and decided it; and specific claim is made in plaintiff's and appellee's answer to the appeal of defendant, for an increase of judgment on that account.

Under these circumstances we are of the opinion that the interest of both parties would be better subserved by the decision of it than by its remission to a separate suit.

On this score the plaintiff claims $1812 63, and the entries on the books show that Camp realized that sum for the mules and wagons belonging to Carpenter, but there appears to have been a previous transaction between Carpenter and Forrest and Munden, in which the former became the purchaser of mules for the price of $600, with which sum Carpenter is charged on the books, and Forrest and Munden are credited. There is a strong probability of this amount having formed a part of the consideration of the subsequent sale by Camp to Forrest and Munden, of Carpenter's stock. If so, then the latter is not entitled to charge Camp with it. We are of that opinion. Inasmuch as the firm of S. D. Carpenter & Co. had no interest in these mules and wagons, and Camp acted as agent, or *negotiorum gestor* for Carpenter, he should be held to account for the surplus of the price of sale, above the $600 Carpenter had withdrawn from the firm in making the investment, and with which he is credited back. The surplus is $1212 63.

The defendant's counsel insists' that when these mules were sold, and their price credited to D. Carpenter, he was a debtor of the con-

cern for a sum exceeding the credit, whereby same was consumed. He instances the general balance of account against him of $4077 20 with which we prefaced our opinion. That, of course, is "begging the question." Conceding the respective balances against the partners the question remains: are those balances correct, or should they be increased or reduced ?

On this question he concludes his argument in these words:

"There were *returned*, of those teams, one by Munden and one by Forrest, value of $600, which leaves Dr. Carpenter, a creditor of the *firm*, $850." Not alone is this admission directly opposed to his previous assumption, but it is itself incorrect in two particulars, viz:

1st. That Carpenter did not thus become a creditor of S. D. Carpenter & Co., but of Camp, who received, and is chargeable with the whole.

2d. That he incorrectly subtracted the $600 from the $1450 representing the two transactions with J. B. Munden and O. P. Forrest; he should have subtracted it from the *total* sales of $1812 63. Had he done so, the amount to which Carpenter is entitled would have been shown to be $1212 63, as above stated.

### . VI.

There seems to be no dispute in regard to the freight bill of $231 85 that Carpenter, Ely & Co. paid for Camp, and which Dr. Carpenter refunded to them. This sum should be credited to Carpenter and charged to Camp.

### VII.

The judge *a quo* ascertained and decided that the plaintiff had not accounted for the sum of $500, which he had withdrawn and used in his settlement with Garrett & Key, of Marshall, Texas, and that this sum should be charged to his account. Of this there is no satisfactory account given by his counsel, and defendant has not requested an increase of the allowance in his favor; hence, this part of the decree of the lower court must be undisturbed.

It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be, and the same is hereby amended in the following particulars, viz:

1st. By charging the defendant Camp with the sum of $643 36, on account of his purchase from Carpenter of one-half interest in the mill.

2d. By charging Camp with $682, money improperly applied to the discharge of his claim for wages.

3d.  By charging Camp with $1330 52, the amount he assumed to pay S. D. Carpenter & Co. for J. J. McDearmont.

4th.  By charging him with $1212 63, as the surplus of the price of the sale of mules and wagons of Dr. Carpenter, above the $600 he had withdrawn from the firm in making the investment in them.

5th.  By charging him the sum of $231 85, the amount of his freight bill on the mill that was paid for him by Carpenter, Ely & Co., and subsequently refunded to them by Carpenter.

It is further ordered, adjudged and decreed, that the judgment and decree appealed from be, and is, hereby affirmed in all other respects; and that, when the partnership property shall have been sold, the proceeds thereof shall be first applied to the payment of the debts of the partnership, which are fixed at the sum of $134 57—this being the amount admitted by both parties, exclusive of the claim of Mrs. R. E. Camp, which cannot be considered, inasmuch as the suit, on her own motion and exception, was dismissed as to her, and next to the satisfaction of the sums awarded the parties respectively this decree, and the residue shall be divided equally between the partners.

The costs of appeal are taxed against the defendant and appellant, and those of the lower court are to be shared equally by the partners.